JjPETERS, J.
The defendant, Christine W. Laird, was charged along with two co-defendants by bill of information with one count of conspiracy to commit simple burglary of an inhabited dwelling, a violation of La.R.S. 14:26 and La.R.S. 14:62.2; one count of simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2; and one count of theft of property having a value over $500.00, a violation of La.R.S. 14:67. The two co-defendants were Wilks L. Laird (Laird), the defendant’s husband, and Gary Joseph Haymon (Haymon), her husband’s first cousin. Prior to trial, Haymon entered a guilty plea to the charges and became the principal witness against the defendant and Laird at trial.
A jury convicted the defendant and Laird of all three charges. The trial court sentenced the defendant to serve one and one-half years at hard labor on the conspiracy charge; serve three years at hard labor on the burglary charge, with one of the three years to be served without benefit of parole, probation, or suspension of sentence; and serve three years at hard labor and pay a $1,000.00 fine on the theft charge. The trial court ordered that all of the sentences run concurrently. The trial court then placed the defendant on supervised probation for a period of four years after suspending all except the one year incarceration sentence required to be served without benefit of parole, probation, or suspension of sentence. The defendant has appealed, asserting four assignments of error.
DISCUSSION OF THE RECORD
In August of 1998, Haymon was released from prison, having served his sentence for a 1991 first-degree robbery conviction. After his release, he began residing with Laird, who is his first cousin, and the defendant. On the evening of Friday, October 23, 1998, Haymon burglarized the home of Mark Willis in Ver-non1 ^Parish, taking eight guns and a blanket. In April of 1999, while incarcerated in East Baton Rouge Parish for an unrelated robbery, Haymon gave a statement to Deputy Ronnie Hagan of the Vernon Parish Sheriffs Office admitting his participation in the October burglary. In doing so, he implicated the defendant and her husband in the planning and commission of the offense as well as the subsequent disposal of the stolen property-
Haymon testified that on October 23, 1998, Laird suggested they commit the burglary that evening because he was aware Willis had a collection of guns and believed the Willis family would, in all probability, be attending the wake of a recently deceased relative. According to Haymon, the defendant was present during the planning of the offense and accompanied the two men in Laird’s Buick automobile to the Willis home.
According to Haymon, Laird first drove to an outside pay telephone at a Pitkin, Louisiana convenience store located less than one-half mile from the Willis home. Haymon testified that Laird reached from the automobile, retrieved the telephone receiver, and dialed Willis’ home telephone number. He then handed the receiver to *430 Haymon, who was sitting in the back seat. According to Haymon, Laird dialed the number twice, and each time Haymon heard a recording. Satisfied that no one was home, Laird drove to the Willis residence, and, between 8:00 and 9:00 p.m., Haymon committed the burglary.
When asked how they intended to commit the crime, Haymon testified as follows:
Well, they was going to drop me off at the house, a little ways down from the house and they was going to go down a road and wait, they was going to give me say fifteen to twenty minutes, give me enough time to go in the house, get the guns and come back to the road and he would pass and he would leave the interior light on in his car so that I would know, you know, who it was ’cause it was dark.
| .¡Haymon stated that he walked to the residence, broke a glass window pane to gain entry, retrieved the guns, wrapped them in a blanket, and exited the residence. When he returned to the pickup point, Laird exited the vehicle and helped him place the guns in the back seat.
According to Haymon, Laird and the defendant then dropped him off on the side of a road while they contacted an individual whom Laird stated would be interested in buying some of the guns. When Laird and the defendant returned approximately fifteen to twenty minutes later, Laird showed Haymon $100.00 that Laird claimed was derived from the transaction. They then returned to the Laird trailer where Haymon remained while Laird and the defendant went to the wake of Willis’ relative. Haymon testified that only then did he become aware that the deceased relative was Willis’ father.
Mark Willis testified that he and his entire family left their Vernon Parish home on the afternoon of the burglary and spent the evening at his father’s wake at a local church. He recalled seeing the defendant, who is his cousin, and her husband at the church sometime during the late evening. According to Willis, members of his family discovered that his home had been burglarized when they returned home in the early morning hours of October 24 to prepare for the funeral.
Haymon testified that, two days after the burglary, Laird sold two of the remaining guns to Johnny Brown (Brown). According to Haymon, sometime after dark on October 25, the defendant drove the two men to Brown’s trailer in the Sugar-town community of Beauregard Parish. Haymon and the defendant remained in the Buick automobile while Laird went to Brown’s trailer and negotiated the transaction. Haymon testified that, upon returning to the car, Laird informed them |4that he had sold Brown the guns, but that Brown still owed him $40.00.
Brown corroborated Haymon’s testimony concerning the October 25 sale. He testified that at approximately 11:30 p.m. on that evening Laird woke him up at his trailer and told him that he had some guns to sell. Brown agreed to purchase two of the guns, but lacked $40.00 of the purchase price. According to Brown, Laird arrived in a Buick automobile driven by a woman. On Wednesday, October 28, 1998, Brown paid the balance of the purchase price to the defendant when she came to his trailer to collect.
After her conviction the defendant filed motions for post-verdict judgment of acquittal and for a new trial. The trial court rejected both motions and sentenced the defendant on each count. The defendant then filed this appeal.

Assignments of Error Numbers 1 and 2

In her first assignment of error, the defendant asserts that the evidence was insufficient to convict her of the charged *431 offenses. In her second assignment of error, she asserts that the trial court erred in not granting her motion for post-verdict judgment of acquittal based on the insufficiency of the evidence presented at trial. We will consider these assignments as one.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
The offense of simple burglary of an inhabited dwelling is defined in La.R.S. |514:62.2 as “the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode ... with the intent to commit a felony or any theft therein, other than as set forth in Article 60.” Although the defendant did not enter the Willis home, she could be found guilty of the offense as a principal.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
La.R.S. 14:24.
Additionally, the commission of the offense of simple burglary of an inhabited dwelling does not preclude prosecution for the separate offense of conspiracy to commit the completed offense.
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
La.R.S. 14:26(A).
Theft is an offense separate from the burglary giving rise to the taking.
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
La.R.S. 14:67(A).
The defendant does not dispute that the record contains evidence that the three [ ^offenses were committed. Instead, she asserts that the evidence presented did not prove beyond a reasonable doubt that she committed the offenses. The defendant argues that Haymoris testimony should not be considered because he is an admitted career criminal who entered into a plea bargain with the state in exchange for his testimony and thereby benefitted from his testimony to her detriment. Without Haymoris testimony, the defendant argues, the evidence establishes only that she attempted to collect $40.00 owed her husband by Brown.
Haymon admitted at trial that he considered himself a career criminal. He testified that he had been incarcerated between 1983 and 1985 for armed robbery and, *432 shortly after his release, committed another robbery. After conviction for that offense, he was again incarcerated from 1991 until his release in August of 1998. Two months later, he committed the offenses now before the court. By the time this matter was tried, Haymon had been convicted of yet another robbery and had been sentenced to forty years at hard labor.
He testified that when Detective Hagan questioned him concerning his involvement in the October 1998 burglary, the detective made no promises concerning his future treatment. Although he acknowledged that the state had agreed to recommend concurrent sentences for his involvement in the Willis burglary, Haymon pointed out that such an agreement was of little value to him, given his prior record. When questioned concerning the plea agreement, he stated that he was thirty-five years of age and understood that he would be required to serve at least eighty-five percent of his forty year sentence regardless of what sentence or sentences he might receive for his involvement in the offenses charged in this prosecution.
The jury heard the evidence of Hay-mon’s prior convictions as well as the terms 17of the plea agreement. It obviously chose to believe his testimony. Applying the Jackson standard to this evaluation, we find no error and conclude that the jury verdict should not be disturbed.
Because we find that the evidence was sufficient to sustain the defendant’s convictions on all three counts, it follows that the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal. Thus, we find no merit in these two assignments of error.

Assignment of Error Number 3

In this assignment of error, the defendant asserts that the trial court erred in denying her motion for a new trial. Louisiana Code of Criminal Procedure Article 851 provides:
The motion for a new trial is based on the supposition that injustice has been done to the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a' new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The defendant originally urged in her motion for new trial that the verdict was contrary to the law and evidence; that there existed new and material evidence which, | sif introduced at trial, would probably have changed the verdict; and that the ends of justice would be served by the grant of a new trial. Because we have already determined, in considering the first two assignments of error, that the *433 verdict was not contrary to the law and evidence presented at trial, we reject that portion of this assignment of error without further comment and consider the remaining portions.
The standard of review applicable to a motion for new trial based on newly discovered evidence has been set forth as follows:
A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at the trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Hammons, 597 So.2d 990, 994 (La.1992); State v. Knapper, 555 So.2d 1335, 1339 (La.1990); State v. Prudholm, 446 So.2d 729, 735 (La.1984). In ruling on the motion, “[t]he trial judge’s duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury’s judgment.” Prudholm, 446 So.2d at 736.
State v. Cavalier, 96-3052, 97-0103, p. 3 (La.10/31/97), 701 So.2d 949, 951.
The defendant argues in her brief that evidence presented at the hearing on the motion for new trial raises questions concerning Haymon’s testimony that justify the grant of a new trial.
At the hearing on the motion for new trial, Dorothy Dixon, Peggy Dickens, and the defendant all testified that Haymon had, some twenty years before these offenses, falsely accused them of the robbery of the Oakdale, Louisiana Pizza Hut. All three women testified that Haymon later recanted his accusations and that the state dropped the charges against them. The defendant mentions this testimony in her brief to this court as an example of Hay-mon’s lack of credibility. However, this evidence clearly [ ndoes not fall in the category of newly discovered evidence. The defendant was one of those allegedly falsely accused. Thus, she had knowledge of this evidence before trial and failed to present it.
In arguing the newly discovered evidence ground, the defendant also asserts that Haymon presented false testimony concerning the telephone calls made at the convenience store prior to the burglary. She argues that at trial Haymon identified the convenience store as “Too-tie’s.” However, at the hearing on the new trial, Vernon Parish Sheriffs Deputy Tommy Pollard testified that an iron pipe guard rail encircles the pay telephone outside Tootie’s, and that the telephone receiver is attached by a cord no longer than two feet. Deputy Pollard opined that it would have been impossible for an individual to remain in the vehicle and place a telephone call as suggested by Haymon.
At trial Haymon initially did not identify the particular convenience store where the telephone calls were placed. Concerning the convenience store’s location and identity, Haymon testified as follows in response to the state’s questions:
Q: Do you know the name of the store that you stopped at?
A: No sir, not right off, it was going into Pitkin to the left.
Q: Would it be — as you are coming from the City of Oakdale, would it be just inside Pitkin on the left there?
A: True.
Q: Does the name Tootie’s ...
A: That sounds familiar.
Q: And, why was it that you stopped at that particular store?
*434 A: Well, we wanted to call and we had to look through the phone book for his number and we pulled up right beside the payphone where we wouldn’t have to get out of the car. They was in the front seat, I was in |inthe backseat, so.
Thus, it was the state and not the defendant who suggested at trial that Tootie’s was the convenience store involved. Furthermore, in his April 1999 statement to Detective Hagen, Haymon only identified the convenience store as Tootie’s after prompting from the detective. The state supplied the defendant with Haymon’s statement through the discovery process, and, thus, the defendant knew long before trial that the state would suggest Tootie’s as the place from which the telephone call was made. Any evidence associated with the nature of the telephone configuration at Tootie’s was discoverable with the exercise of reasonable diligence.
Finally, the defendant relies on Devon James’ testimony, presented at the hearing on the motion for new trial, concerning an alleged attempt by Haymon to extort money from the Lairds to change his testimony as justification for the grant of a new trial. James testified that he shared a cell with Haymon in the Vernon Parish jail during the trial on the merits, and, during that time, Haymon attempted to telephone the defendant to have her obtain $2,000.00 for him in exchange for him changing his testimony. James asserted that Haymon told him of the telephone attempts after they occurred, and further told him that the first time the defendants saw the stolen guns was when he (Haymon) returned to their home with the guns in a truck.
The trial court acknowledged that James’ testimony was not discoverable before or during trial, but concluded that, had it been introduced at trial, it would not have changed the verdict.
Newly discovered evidence affecting only a witness’s credibility “ordinarily will not support a motion for a new trial, because new evidence which is ‘merely cumulative or impeaching’ is not, according to the often-repeated statement of the courts, an adequate basis for the [ngrant of a new trial.” Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1, 5 (1956).

Id.

In this case, James testified that he knew Laird, having met him in jail. He acknowledged that Laird had suggested that if he was released from jail, he would attempt to help James in being released as well.
Reviewing the record as a whole, we do not find that the trial court erred in concluding that James’ testimony would not have changed the jury’s verdict. Additionally, we conclude that the trial court did not err in rejecting the defendant’s motion for new trial on all the bases raised. Thus, we find no merit in this assignment of error.

Assignment of Error Number 4

In this final assignment of error, the defendant asserts that her sentences are excessive. Because we find an error patent on the surface of the record that requires a remand for re-sentencing, we need not consider this assignment of error at this time. See La.Code Crim.P. art. 920(2).
After suspending the defendant’s sentences with the exception of the one-year mandatory incarceration penalty, the trial court placed the defendant on four years supervised probation. It is not clear whether the supervised probation period applied to all three or merely one or two of the suspended sentences. Thus, the defendant’s sentences are indeterminate and contrary to La.Code Crim.P. art. 879. While appearing insignificant at first *435 glance, the manner in which the probation period affects each individual sentence becomes important in the event of a probation violation.
After determining which sentences are subject to supervised probation, the trial l-iycourt must also determine whether the probation periods are to run consecutive or concurrent, and must determine at what point the probated sentences are to begin on each count. La.Code Crim.P. art. 883; State v. Bradley, 99-364 (La.App. 3 Cir. 11/3/99), 746 So.2d 263.
In not considering this assignment of error, we specifically make no findings concerning the excessive sentence assertion.
DISPOSITION
For the foregoing reasons, we affirm the defendant’s convictions in all respects. We vacate the sentences imposed and remand this matter to the trial court for re-sentencing in a manner consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.