708 So.2d 1140 (1998)
James SIMS
v.
WACKENHUT HEALTH SERVICES, INC., Wackenhut Corrections Corporation, State of Louisiana Through the Department of Public Safety and Corrections, Carrol Guinn, M.D., and E. Michael Hageman.
No. 97 CW 1147.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Joseph T. Dalrymple and Eugene A. Ledet, Jr., Alexandria, for Plaintiff/Relator James Sims.
Michael T. LaPlace, Baton Rouge, LA.
Andre' Charles Castaing, Baton Rouge, for Defendant/Respondent State of Louisiana Through the Department of Public Safety and Corrections.
Hunter W. Lundy and Samuel B. Gabb, Lake Charles, for Defendant/Respondent Wachenhut Corrections Corporation.
Before CARTER and FITZSIMMONS, JJ., and REMY CHIASSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
This action involves a suit for damages by James Sims, a former prisoner. He asserts that he was denied proper medical treatment while incarcerated at a prison facility operated by the Wackenhut Corrections Corporation. When the suit was filed, relator was in custody. Subsequently he was granted parole, and he was released from custody. In the writ application before the court, relator seeks review of an order issued by a commissioner at the 19th Judicial District Court, *1141 which stayed the proceedings. The commissioner determined that relator was required to exhaust his administrative remedies before proceeding with the suit, and she issued a stay order to allow relator sixty days in which to file an amended grievance. At relator's request, the commissioner, thereafter, stayed the implementation of the administrative ruling pending Mr. Sims' writ application to this court. This court granted certiorari to review the commissioner's action.

Facts
Mr. Sims was a diabetic inmate. On November 17, 1993, he wrote a letter to the warden at the Wackenhut Corrections Corporation. He alleged inadequate treatment by the attending physician and inadequate care at the Wackenhut Corrections Corporation infirmary. He sought administrative relief to prevent the loss of his foot. Mr. Sims received no response whatsoever. On January 1, 1994, a transmetatarsal amputation of relator's foot was performed. Mr. Sims was, thereafter, transferred to Avoyelles Correctional Center.
On February 15, 1994, Mr. Sims sent a different letter to Dr. Quyen Tran at Avoyelles Correctional Center, requesting a transfer to Huey P. Long Hospital for improved treatment. Relator simultaneously transmitted a separate letter to the warden's office at the correctional center, imploring the warden to transfer him to a better equipped hospital, where he could receive adequate medical assistance. He received no response to any of his letters. Subsequently, in March, 1994, Mr. Sims' left leg was amputated.
On November 22, 1994, relator sued the State of Louisiana through the Department of Public Safety and Corrections, Wackenhut Health Services, Inc., Wackenhut Corrections Corporation, Carrol Guinn, M.D. (the treating physician at the infirmary), and E. Michael Hageman, M.D. (the medical director). According to the petition, while in custody, relator walked long distances twice daily to receive insulin injections for the treatment of diabetes. As a result of this walking, he developed sores on his feet which, allegedly because of inadequate medical care and the failure of prison officials to provide the treatment ordered by the doctors, eventually resulted in the initial amputation of part of his left foot in January, 1994. It was asserted that continued inadequate treatment, including a disregard of a physician's recommendation that relator be transferred to a different hospital facility, caused the ultimate amputation of his left leg in March, 1994.
The Department of Public Safety and Corrections filed a peremptory exception of abandonment, claiming the suit should be dismissed because the prisoner failed to properly pursue his administrative remedies under the Corrections Administrative Remedy Procedure Act before filing the suit. La. R.S. 15:1171-15:1177. The department initially alleged the prisoner did not initiate the grievance procedure. In a supplemental memorandum submitted in support of the exception, the department conceded that a letter written to the warden by Mr. Sims, which was received on February 16, 1994, was sufficient to be viewed as a request for administrative remedy.
After hearing argument on the department's exception, the commissioner issued a stay order. The commissioner determined that, because relator's discharge from custody occurred after the suit was filed, he was required to exhaust his administrative remedies before proceeding any further with the suit. The commissioner ordered the department to process the amended request for administrative relief to the Secretary of the Department of Public Safety and Corrections, at the third step of the administrative review process

Exhaustion of Administrative Remedies
The Department of Public Safety and Corrections operates according to rules and regulations that it promulgated pursuant to the Administrative Procedure Act[2]. Title 22, *1142 "Corrections, Criminal Justice and Law Enforcement," Part 1, Chapter 3, section 325 of the departmental regulations addresses the administrative remedy procedure for inmates, or offenders. That section expressly states in sub-section (G), in pertinent part:
"The requests shall be screened in the unit head's office, and, if appropriate for handling through the administrative remedy procedure, shall be forwarded to the staff member who could best afford relief ... [.] The unit head's office will send notice to the offender via Form ARP-1 that his request is either being processed, or is being rejected, as per the screening process. The first step respondent will respond to the offender within 15 days from the date the request is referred to the first level respondent by the unit head.... The unit head shall see to it that the offender receives his response in writing within 25 days of receipt of the request for second step review." (Emphasis supplied.)
The procedures set out in the Corrections Administrative Remedy Procedure Act provide the exclusive remedy available to inmates to preserve a cause of action against the department or its employees, including a claim for monetary relief. La. R.S. 15:1171 & 15:1172; Blackwell v. Louisiana Department of Public Safety & Corrections, 96-0954, 96-0955, pp. 5-7 (La.App. 1st Cir. 2/14/97); 690 So.2d 137, 140-41, writ denied, 97-1158 (La.9/5/97), 700 So.2d 507. A state court is precluded from entertaining an offender's complaint which falls under the purview of the administrative remedy procedure until the offender has exhausted the remedies provided to him by the procedure. If an offender fails to timely pursue administrative remedies through the procedure established by the statute, any petition he files must be dismissed. If at the time the petition is filed the process has not yet been completed, the court is required to stay the proceedings for ninety days to allow completion of the procedure and exhaustion of the remedies. La. R.S. 15:1172(B).
The Department of Public Safety and Corrections failed to follow its own explicit guidelines requiring that it advise Mr. Sims that his request was being processed, or that it was being denied. The department was utterly remiss in its handling of the regulations that it had written and instituted. Not one of the prescribed internal administrative regulations for processing offenders' requests was implemented. It is, therefore, fatuous for the department to argue that it denied relator's request. Between the time of Mr. Sims' first request for preventive assistance and his subsequent two letters, his foot was partially amputated. His leg was then amputated after he received no indication from the administration regarding his latter written attempts for assistance. It is ludicrous for the department to now attempt to penalize an inmate for his failure to proceed pursuant to the very bureaucratic channels that were failing him in his attempts for communication, while his leg proceeded to be amputated in stages.
Moreover, it is erroneous for the department to assert that the time delays have expired because relator failed to proceed to the third step within the regulatory ninety day time limit imposed by the department. A reading of a pertinent portion of that section indicates that the "[t]ime limits begin on the date the request is assigned to a staff member for a first step response." (Emphasis supplied.) 22 La. Reg. 325(H)(1) (1991). There is no indication that the matter was ever assigned to a staff member; therefore, there is no evidence to substantiate that the administratively imposed ninety day period ever commenced.
If the department did not follow its own procedural requirements, any questions regarding the completion of the three step process should, a fortiori, be strictly interpreted against it. The department drafted the administrative remedy procedure. The department's blatant failure to follow its own procedural rules and regulations should not be manipulated to accrue to its benefit. It is, moreover, unconscionable to demand that relator continue to pursue heretofore hollow administrative remedies, when the system has defaulted[3]. By failing to respond on all *1143 three attempts of the relator, the department has produced a very confusing procedural status that it is now trying to exploit. It is particularly egregious to demand that a layman inmate be bound by departmental deadlines that have become blurred due to the inaction of the department. In eschewing its own remedial process, the department has effectively precluded the offender from proceeding to the next step. Under these factual circumstances, the administrative remedies have been pursued by the offender to the fullest extent possible under the circumstances. They are no longer applicable to relator. The next step in the remedial process would be to seek a legal remedy in court, as the relator has done. The relator has, thus, not failed to timely pursue his administrative remedies. The exception of abandonment brought by respondents is unfounded.
Accordingly, the commissioner's orders to stay the proceedings to pursue the third step of the administrative remedy process and to file an amended request for administrative relief are vacated. The exception of abandonment is denied.
STAY ORDER AND ORDER FOR AMENDED ADMINISTRATIVE REQUEST VACATED; EXCEPTION OF ABANDONMENT DENIED.
REMY CHIASSON, J. Pro Tem., concurs, and assigns reasons.
REMY CHIASSON, Judge Pro Tem., concurring.
I concur in the result for the following reasons:
The Corrections Administrative Remedy Procedure Act provides a time limit for administrative action to wit:
§ 325 H. Deadlines and Time Limits:
1. No more than 90 days from initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, expiration of response time limits shall entitled the offender to move on to the next step in the process. Time limits begin on the date the request is assigned to a staff member for a first step response. (Emphasis Added)
According to Subsection (D) of § 325 the "[i]nitiation of the [p]rocess ... shall commence the day the unit head refers the request to a staff member for the first step." Subsection (E) also provides that "[a]t every stage of decision and review, offenders will be provided written answers that explain the information gathered or the reasons for the decision reached and a statement of any provision for further review, along with simple directions for obtaining such review."
The department never initiated the process by appropriately referring the requests of the relator and effectively foreclosed any opportunity for relator to pursue his administrative remedy. Under these circumstances I believe that the relator has completed his process of administrative review and is now in a posture to proceed with his suit in the nineteenth judicial district court.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Statutory authority for the administrative remedy procedure adopted by the Department of Public Safety and Corrections is located in La. R.S. 15:1171; the dictates of 42 U.S.C. § 1997, "Civil Rights of Institutionalized Persons Act" (CRIPA); and Part 40 of Title 28, Code of Federal Regulations.
[3] This matter is factually distinctive from the particulars in Green v. State, 96-0781 (La.App. 1st Cir. 5/9/97); 693 So.2d 1317; writ not considered, 97-1563 (La.10/3/97); 701 So.2d 189, in which the inmate failed to initiate any administrative remedies whatsoever before proceeding to court.