746 So.2d 263 (1999)
STATE of Louisiana
v.
Damon BRADLEY.
No. K99-364.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
*265 Robert Richard Bryant Jr., Mike K. Stratton, Lawrence Babineaux, Asst. Dist. Atty., Lake Charles, for State of Louisiana.
John Coffman, Lake Charles, for Damon Bradley.
Before DOUCET, C.J., PETERS, and SULLIVAN, Judges.
PETERS, J.
Damon Bradley filed this supervisory writ application seeking reversal of the trial court's judgment denying his motion to quash a probation revocation proceeding filed against him. Bradley asserts that he was not on probation when he committed the acts giving rise to the probation revocation judgment and that, therefore, the trial court has no authority to proceed with the probation revocation proceedings.
On March 26, 1998, Bradley entered a guilty plea to one count of simple burglary, a violation of La.R.S. 14:62, and one count of distribution of cocaine, a violation of La.R.S. 40:967(A)(1). The trial court sentenced Bradley to serve ten years at hard labor on each count, with the sentences to run concurrently. The trial court then suspended eight years of each sentence and placed Bradley on five years supervised probation with special conditions of probation. However, the trial court failed to specify the date the five-year probationary period would begin.
Bradley immediately began serving his two-year term of imprisonment. On April 23, 1998, while still incarcerated, Bradley received a visit from Fred Blacklock, a state probation and parole officer. At that time, Blacklock presented Bradley with a document entitled "CONDITIONS OF PROBATION," containing a list of conditions applicable to Bradley's probation. Bradley signed the document, acknowledging an understanding of his probation conditions. He obtained a parole release on June 18, 1998.
On July 25, 1998, while still on parole, Bradley was arrested for armed robbery, a violation of La.R.S. 14:64; illegal possession of stolen things, a violation of La.R.S. 14:69; and simple escape, a violation of La.R.S. 14:110. The state then filed a motion to revoke Bradley's probation, asserting as grounds for revocation this criminal activity as well as alleged violations of four other conditions of his probation. Bradley responded to the state's action by filing a motion to quash this effort to revoke his probation. The trial court denied Bradley's motion to quash at a hearing held January 29, 1999. This writ application followed the trial court's action.
Bradley asserts that his parole is basically a continuing aspect of his two-year incarceration sentence and that his probation sentence will not begin until he completes that portion of his sentence. On the other hand, the state asserts that, absent the trial court setting a specific date for beginning Bradley's probationary period, it began immediately upon his incarceration. Thus, the state asserts that Bradley was on both parole and probation on July 25, 1998. Because we find no direct statutory or jurisprudential guidance addressing the issues raised herein, we find it necessary to evaluate the statutory relationship between custodial sentences, probationary sentences, and those which include both custodial and probationary terms.
A sentence is defined as "the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilt." La. Code Crim.P. art. 871(A). Additionally, "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." La.Code Crim.P. art. 879. If a sentence includes imprisonment in the *266 state penitentiary, that portion of the sentence "shall be served in conformity with the applicable provisions of Title 15 of the Louisiana Revised Statutes of 1950 that govern the state penitentiary." La.Code Crim.P. art. 890(A). These provisions require that the individual so sentenced be committed, not to a particular institution, but to the custody of the Louisiana Department of Public Safety and Corrections (DOC). La.R.S. 15:824(A).
Once in custody of the DOC, an inmate may be released from physical custody only by completion of his sentence, by earning a diminution of sentence pursuant to La.R.S. 15:571.3, or by release on parole pursuant to La.R.S. 15:574.4. In either of the last two instances, the release is governed by the rules concerning release on parole. La.R.S. 15:571.5. Release on parole is a release from only DOC's physical custody because DOC still retains legal custody over the parolee. See La.R.S. 15:574.7(A).
The power to regulate one on parole is vested in a parole board created within DOC. La.R.S. 15:574.2. The parole board's powers and duties concerning an individual's release on parole are defined in La. R.S. 15:574.2(C), which reads in pertinent part as follows:
(1) To determine the time and conditions of release on parole of any person who has been convicted of a felony and sentenced to imprisonment, and confined in any penal or correctional institution in this state.
(2) To determine and impose sanctions for violation of the conditions of parole.
. . . .
(7) To adopt such rules not inconsistent with law as it deems necessary and proper, with respect to the eligibility of prisoners for parole, and to the conditions imposed on persons released on parole.
Assuming a defendant does not violate any conditions of his parole, the term of his parole is the remainder of his sentence, "without any diminution of sentence for good behavior." La.R.S. 15:574.6. If the parolee violates the conditions of his parole and the board revokes his parole, the parolee "shall be returned to the physical custody of the Department of Public Safety and Corrections, office of corrections services, and serve the remainder of his sentence as of the date of his release on parole, subject to consideration by the board of any commutation of the sentence, and any diminution of sentence earned for good behavior while in the institution." La.R.S. 15:574.9(E).
Even when imposing a determinate sentence, the trial court has the discretion to suspend all or part of certain sentences in felony cases and to place a defendant on probation. La.Code Crim.P. art. 893. In the event the trial court chooses to suspend all or part of the sentence, it may "place the defendant on probation under the supervision of the division of probation and parole" for a specified time of not "less than one year nor more than five years." La.Code Crim.P. art. 893(A).
A probationary sentence carries with it mandatory and discretionary conditions. La.Code Crim.P. arts. 895 and 895.1. The conditions vary depending on the nature of the criminal activity involved as well as the financial condition and education of the defendant. Those conditions applicable to all defendants placed on probation are found in La.Code Crim.P. art. 895(A), which provides:
When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
(1) Make a full and truthful report at the end of each month;

*267 (2) Meet his specified family responsibilities, including any obligations imposed in a court order of child support;
(3) Report to the probation officer as directed;
(4) Permit the probation officer to visit him at his home or elsewhere;
(5) Devote himself to an approved employment or occupation;
(6) Refrain from owning or possessing firearms or other dangerous weapons;
(7) Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court;
(8) Refrain from frequenting unlawful or disreputable places or consorting with disreputable persons;
(9) Remain within the jurisdiction of the court and get the permission of the probation officer before making any change in his address or his employment; and
(10) Devote himself to an approved reading program at his cost if he is unable to read the English language.
(11) Perform community service work.
(12) Submit himself to available medical, psychiatric, mental health, or substance abuse examination or treatment or both when deemed appropriate or ordered to do so by the probation and parole officer.
(Emphasis added.)
The provisions of La.Code Crim.P. art. 895.1(A)(1) convert the discretionary condition of probation found in La.Code Crim.P. art. 895(A)(7) to a mandatary one where "the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense." Additionally, in La.Code Crim.P. art. 895.1(B), the trial court's discretion in setting conditions of probation is expanded to include requiring the probationer to pay a sum of money to a number of organizations, including the trial court's indigent defender program or criminal court fund; the sheriff or clerk of court; the law enforcement agency responsible for the probationer's initial arrest in cases involving distribution or intent to distribute controlled dangerous substances; the victim as compensation for his loss and inconvenience; and a duly incorporated crime stoppers organization which incurred costs in obtaining information leading to the arrest. In addition, La.Code Crim.P. art. 895.1(C) requires that the trial court set the monthly probation fee required in La.Code Crim.P. art. 895(A) at not less than $20.00 nor more than $100.00. Once the conditions are imposed, "[t]he defendant shall be given a certificate setting forth the conditions of his probation and shall be required to agree in writing to the conditions." La.Code Crim.P. art. 895(I).
Thus, the incarceration sentence is subject to the rules governing operation of the state penitentiary system, including specifically the statutory rules governing parole. Even if physically released on parole, the individual remains in the legal custody of the state until release from parole. The trial court has no authority with regard to this phase of the sentence and can impose no condition on the parole responsibilities of the parolee. See State v. Douglas, 576 So.2d 1102 (La.App. 3 Cir.1991). On the other hand, probation envisions control by the trial court over the suspended portion of the sentence.
In sentencing Bradley, the trial court made the following statements:
[O]n each of the charges I'm going to sentence you to ten years in the Department of Corrections. I'll suspend all but two years thereof; place you on five years supervised probation under the usual conditions of 895 of the Code of Criminal Procedure. As a special condition of your probation you will have to pay a fine of $1,000.00 plus Court costs. As a condition of probation you have to pay a $20.00-per-month probationary *268 fee. As a condition of probation you will have to go through drug screens, one per week. That will be unscheduled, but once a week. As a condition of probation you will have to accept treatment and after-care if determined to be necessary by Probation and Parole. As a condition of probation you will have to attend at least one NA meeting per week. That's Narcotics Anonymous. As a condition of probation you will have to perform two hundred hours of community service. As a condition of probation you will have to make restitution to the victims, to be determined, the amount and to whom, by Probation and Parole.... I will run them concurrently with each other, and credit for time served.
The trial court then clarified its sentence by stating that the random drug tests would be "a minimum of one per week," and that the restitution would be that found due in three complaints pending in state district court and one in the Lake Charles City Court.
The state asserts that because the trial court did not specify when probation was to begin, it began immediately after incarceration. Brenda Eaves, a state probation and parole agent and Bradley's probation officer, testified that when a defendant is sentenced to a "split sentence," as was Bradley, it is the office policy of the DOC to assume probationary supervision the date the prisoner is released from incarceration or released on parole. However, Ms. Eaves further testified that DOC's office policy was that "probation started on the date of conviction or sentence." (Emphasis added).
It is obvious from the special conditions placed by the trial court on Bradley's probation that the trial court envisioned that Bradley's probation would be in effect only after his release from incarceration. Had Bradley served the full two years and not been released on parole, it is doubtful that he or the state would have contested his five-year probation beginning when he was released from DOC's legal and physical custody. We find no reason to alter that date because of its interruption by a period of parole, where Bradley remained under DOC's legal custody during that time.
The fact that a probation and parole officer may have presented Bradley with his conditions of probation upon his release on parole does not change the beginning probation date. Additionally, Bradley paid a monthly parole fee ($43.00) upon his release from DOC's physical custody and did not pay a probation fee.
We are not persuaded that DOC's office policy in this regard is an accurate interpretation of applicable law. La.Code Crim.P. art. 2 explains:
The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay.
While there may be a situation in which a trial court might decide to run the incarceration phase of the sentence with the probation phase, we would find such a situation to be extraordinary. To accept DOC's policy as applicable to all cases would lead to absurd results in cases where the incarceration phase of a "split sentence" exceeds the probation phase. In that situation, a probationary sentence would be equivalent to no sentence at all.
DOC's office policy also conflicts with La.Code Crim.P. art. 895(A) wherein one of the two mandatory conditions of probation is payment of "a supervision fee to defray the costs of probation supervision." Such a mandatory condition presupposes that the probationer is free from custody to earn sufficient funds to pay the fee. Additionally, it is obvious that the trial court envisioned that Bradley's probation would be effective only after his release from incarceration, given its imposed special conditions.
*269 Had Bradley remained incarcerated the full two years, it is doubtful that he or the state would have argued that the five-year probationary period began at any time other than after his release from DOC's physical and legal custody. We find no reason to alter that date because the incarceration sentence was interrupted by a period of parole. Therefore, we conclude that when the trial court renders a sentence containing both incarceration and probationary terms and fails to state when the defendant's probation begins, the period of probation begins upon the defendant's release from both the physical and legal custody of DOC, i.e., if the defendant serves the whole of the term of incarceration to which he was sentenced, then the probated portion of his sentence begins to run on the date of his release from prison. However, if the defendant is released before he serves the whole of the term of incarceration to which he was sentenced, he is on parole for the remainder of the term to which he was to be incarcerated, and the probated portion of his sentence does not begin to run until he completes his period of parole. See Parkerson v. Lynn, 556 So.2d 91 (La.App. 1 Cir.1989), writ denied, 563 So.2d 1151 (La.1990). We thus conclude that the trial court erred in not granting Bradley's motion to quash.

DISPOSITION
For the foregoing reasons, we grant the writ application and reverse the ruling that denied Damon Bradley's motion to quash. We render judgment herein granting the motion to quash and dismissing the probation revocation proceedings.
WRIT GRANTED AND MADE PEREMPTORY.