# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-857


**JAMES COLEMAN**

**VERSUS**

**WARDEN THOMPSON**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 218,987
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.


           **AFFIRMED.**


**Laurel Irene White**
**Assistant Attorney General**
**Louisiana Department of Justice**
**Division of Risk Litigation**
**P. O. Box 1710**
**Alexandria, LA 71309**
**Telephone:  (318) 487-5944**
**COUNSEL FOR:**
      **Defendant/Appellee - Warden Thompson**

**James Coleman**
**In Proper Person**
**2022 N. Lobdell Boulevard - #40**
**Baton Rouge, LA 70806**

THIBODEAUX, Chief Judge.

This case involves an inmate's claim for compensatory damages of $25,000.00 and punitive damages of $10,000.00 based upon a warden's alleged failure to timely release him to another facility where he could participate in a work release program. The inmate, James Coleman, was released to the work release program on December 28, 2004. His suit was dismissed against Warden Thompson for failure to exhaust his administrative remedies before filing suit in the district court. For the following reasons, we affirm the judgment of the district court.

I.

## ISSUES

We must decide whether the district court erred in dismissing an inmate's action against Warden Thompson.

II.

## FACTS AND PROCEDURAL HISTORY

Coleman filed suit against Warden Thompson of the Louisiana Department of Corrections, J. Levy Dabadie Correctional Center (JLDCC), on November 15, 2004. His suit was entitled "Tort Action for Damages under Act 42 U.S.C. § 1983." However, the allegations were not based upon tort. Inmate Coleman alleged that his due process and equal protection rights were violated by Warden Thompson because Coleman was not timely granted a work release. Accordingly, Coleman's suit is in substance a challenge to the rules and conditions of his confinement. For such complaints, an inmate is required to exhaust the administrative remedy procedure which governs those complaints before filing suit in district court. The defendant, Warden Thompson, through the Attorney General,

filed a Motion to Dismiss,[1] asserting that Coleman did not exhaust his administrative remedies.

The record indicates that Coleman was released to the Rapides Parish Work Release program on December 28, 2004. The record does not contain any information regarding Coleman's crime or the length of his sentence. One of his exhibits contains correspondence wherein Coleman references having been incarcerated eleven and one half (11 ½) years, and his brief indicates incarceration at several facilities. Warden Thompson's brief states that Coleman had been incarcerated at the JLDCC facility from July 10, 2000 until his work release on December 28, 2004. The record further indicates that the eventual approval of work release in August 2004 was based upon a "good time/parole" work release application. The eligibility period for this type of work release appears to be six months before the end of the prisoner's sentence.

Coleman alleges that he was entitled to a screening for work release twenty-four (24) months before the end of his sentence, and that he began requesting the screening in November-December 2003. However, all of his exhibits, including his outgoing letters and incoming responses, are dated in 2004.

The first exhibit in the file is a May 17, 2004 work release status form indicating a denial, stating that Coleman was "screened too early," and stating that Coleman would be re-screened in October 2004. Coleman asserts that he was "[a]t the 18 month period" at the time of this denial on May 17, 2004. Under the governing administrative remedy procedure, discussed more fully below, Coleman had ninety (90) days to write a letter to the warden, using statutorily required language, in order to obtain administrative review of the denial.

---

[1]While the desired outcome for the defendant in this case was a dismissal, his pre-trial "Motion to Dismiss" would more properly have been captioned "Exception of Prematurity," or "Exception of Lack of Subject Matter Jurisdiction,"and we will treat it accordingly.

The second exhibit is an undated note from the desk of the assistant warden, Keith Deville, stating that Coleman would be brought up for screening in August, 2004.

The third exhibit is the work release approval, dated August 18, 2004, based upon the "good time/parole" application.

The fourth exhibit is the first correspondence in the record from Coleman. It is a letter dated October 18, 2004 addressed to Richard Stalder, Director of the Department of Safety and Corrections, asking for Stalder's assistance in getting Coleman a work release to the West Baton Rouge facility or, in the alternative, the East Baton Rouge facility, and it contains complaints of being held back.

The fifth exhibit is a note from Coleman to Warden Thompson dated October 26, 2004, requesting a "few moments" of the Warden's time. It does not state why the meeting is requested. This is the first correspondence addressed to Warden Thompson. Coleman wrote Director Stalder again on November 15, 2004 stating that he had been approved since August but was told that he was on backlog. Coleman complained that other inmates were being transferred. Coleman filed suit in district court on the same date as the letter, November 15, 2004.

On November 29, 2004, Coleman wrote to the assistant warden again. On November 30, 2004, the assistant warden responded that he had received Coleman's letter and would let him know when he would be leaving.

While not included in Coleman's exhibits, the bound record contains one other letter from Coleman to Warden Thompson written on December 1, 2004, complaining about Christmas procedures and policy changes concerning work release screening for multiple offenders. However, it does not address Coleman's personal plight in any manner, but rather is written from the perspective of Coleman as a dorm representative asking for notices to post in the dormitory. The reference line in this

letter states, "RE: Memorandum / Policy Change Concerning Work Release Screening." Coleman's exhibits further contain two acknowledgment letters from Congressman Richard Baker stating that he had written Director Stalder on Coleman's behalf.

The suit filed by Coleman on November 15, 2004, seeks compensatory damages in the amount of $25,000.00, ostensibly for the money he could have earned if released to the work release program earlier, and also seeks punitive damages in the amount of $10,000.00.

Warden Thompson sought a dismissal based upon Coleman's failure to first exhaust the administrative remedies available to him pursuant to the Corrections Administrative Remedy Procedure Act (CARP) La.R.S. 15:1171, *et seq*.

III.

## LAW AND DISCUSSION

### Administrative Remedy

Coleman contends that the district court's decision to dismiss his suit is contrary to law and fact. However, our review of the applicable law and the facts and the evidence, pursuant to the exhibits in the record, indicates that Coleman was required to submit a proper written Request for Administrative Remedy regarding the denial of his request to be placed in a work release program according to the statutory procedures, and he did not do so. The record contains the affidavit of the paralegal with the Department of Public Safety and Corrections, Legal Services, Office of the Secretary, Kimberley LeMaire. The affidavit states that in accordance with the *Disciplinary Rules and Procedures for Adult Inmates,* Coleman had 90 days from the date of an incident to submit a request for administrative remedy, and that Coleman

4

did not comply, thereby failing to exhaust the administrative remedies available to him.

More specifically, Coleman seeks redress from institutional policies and the conditions of his confinement, which must first be adjudicated by way of the Adult Administrative Remedy Procedure (AARP), La. Admin. Code tit. 22, pt. XI, § 325 (2005), which is incorporated and made a part of the Corrections Administrative Remedy Procedure (CARP), La.R.S. 15:1171, *et seq.*, before judicial review is sought in the district court. This is the inmate's sole remedy for non-tort claims. *See Pope v. State*, 99-2559 (La. 6/29/01), 792 So.2d 713 (La.R.S. 15:1171-15:1179, Corrections Administrative Remedy Procedure, unconstitutional to the extent the statutes are applied to tort actions).

Warden Thompson asserts that all inmates are made aware of the administrative remedy procedure at orientation where they have the opportunity to ask questions and receive answers, and that the procedures are posted in writing in accessible areas, pursuant to La. Admin. Code tit. 22, pt. XI, § 325(E)(2) (2005). Warden Thompson further asserts that the AARP requires that the inmate's request for review of a denial for work release must be in writing and must contain the phrase, "This is a Request for Administrative Remedy," pursuant to La. Admin. Code tit. 22, pt. XI, § 325(F)(2)(a) and (b) (2005).

Coleman admits that his correspondence did not contain the statutory heading or language. He asserts, however, that a pleading is determined by its substance, not its heading, that he nonetheless complied with the criteria, and that the district court should be reversed. Our review of the record and the statutes setting forth the procedures for obtaining administrative remedy indicates that the district court was correct in dismissing Coleman's suit, as the district court did not have authority to hear the case due to Coleman's failure to exhaust his administrative

remedies before filing suit. Nor did Coleman properly invoke the administrative

process after filing suit, such that it could in any manner be deemed pending. More

specifically, Coleman did not write any letter within ninety days after the written

denial for work release in May 2004; therefore, that review was forfeited. To the

extent that his complaint may be based also upon not being processed soon enough

after his approval for work release in August 2004, none of the letters following this

approval meet the criteria mandated by the applicable statutes.

### Corrections Administrative Remedy Procedure (CARP)

The Corrections Administrative Remedy Procedure (CARP) provides,

in pertinent part, the following:

**[La.R.S. 15:]1171. Authority**

A. The Department of Public Safety and Corrections and each sheriff may adopt an administrative remedy procedure at each of their adult and juvenile institutions, including private prison facilities.

B. The department or sheriff may also adopt, in accordance with the Administrative Procedure Act, administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof, the contractor operating a private prison facility or any of its employees, shareholders, directors, officers, or agents, or a sheriff, his deputies, or employees, which arise while an offender is within the custody or under the supervision of the department, a contractor operating a private prison facility, or a sheriff. Such complaints and grievances include but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Such administrative procedures, when promulgated, shall provide the exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows. All such procedures, including the adult and juvenile

6

offender disciplinary process, promulgated and effective prior to June 30, 1989, shall be deemed to be the exclusive remedy for complaints and grievances to which they apply insofar as federal law allows. (Footnote omitted).

. . . .

## § 1172. Administrative remedies; applicability; initiation

A. Upon adoption of the administrative remedy procedure, in accordance with the Administrative Procedure Act, and the implementation of the procedure within the department or by the sheriff, this procedure shall constitute the administrative remedies available to offenders for the purpose of preserving any cause of action they may claim to have against the state of Louisiana, the Department of Public Safety and Corrections, or its employees, the contractor operating a private prison facility or any of its employees, shareholders, directors, or officers, or a sheriff, or his employees or deputies. Any administrative remedy procedure in effect on January 1, 2001, including the procedure published in LAC 22:I.325, is deemed to be in compliance with the provisions of this Section.

B. (1) An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained.

(2) The department is authorized to establish deadlines for an offender to initiate administrative remedies for any nondelictual claims.

(3) The department is authorized to establish deadlines for the procedures and processes contained in the administrative remedy procedure provided in LAC 22:I.325.

C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed *with prejudice*. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice. (Emphasis added).

. . . .

7

## § 1176.  Records, confidentiality

Before any cause of action may be heard in any state or federal court, administrative remedies must be exhausted under the procedure authorized by this Part. . . .

## § 1177.  Judicial review of administrative acts; exception

A.  Any offender who is aggrieved by an adverse decision, excluding decisions relative to delictual actions for injury or damages, by the Department of Public Safety and Corrections or a contractor operating a private prison facility rendered pursuant to any administrative remedy procedures under this Part may, within thirty days after receipt of the decision, seek judicial review of the decision only in the Nineteenth Judicial District Court or, if the offender is in the physical custody of the sheriff, in the district court having jurisdiction in the parish in which the sheriff is located, in the manner hereinafter provided:

. . . .

## Adult Administrative Remedy Procedure (AARP)

The Louisiana Administrative Code at Title 22 (Corrections, Criminal Justice and Law Enforcement), Part I (Corrections), Section 325, (Adult Administrative Remedy Procedures), provides in pertinent part as follows:

A.  *Administrative Remedy Procedure*

1.  On September 18, 1985, the Department of Public Safety and Corrections installed in all of its adult institution a formal grievance mechanism for use by all inmates committed to the custody of the Department.  The process bears the name Administrative Remedy Procedure (ARP).  Inmates are required to use the procedure before they can proceed with a suit in Federal and State Courts.

2.  Inmates are encouraged to continue to seek solutions to their concerns through informal means, but in order to insure their right to use the formal procedure, they should make their *request to the warden in writing within a 90 day period after an incident has occurred.*  If, after filing in the formal procedure an inmate receives a satisfactory response through informal means, the inmate may request (in

8

writing) that the warden cancel his formal request for an administrative remedy. (Emphasis added).

. . . .

B. *Purpose*. Corrections Services has established the Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his incarceration if less formal methods have not resolved the matter. Such complaints and grievances include, but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Through this procedure, inmates shall receive reasonable responses and where appropriate, meaningful remedies.

. . . .

F. *Procedure*

2. Initiation of Process. Inmates should always try to resolve their problems within the institution informally, before initiating the formal process. This informal resolution may be accomplished through discussions with staff members, etc. If the inmate is unable to resolve his problems or obtain relief in this fashion, he may initiate the formal process.

a. The method by which this process is initiated is by a letter from the inmate to the warden. For purposes of this process, a letter is:

i. any form of written communication which contains this phrase: "*This is a request for administrative remedy*;" or

ii. Form ARP-1 at those institutions that wish to furnish forms for commencement of this process.

b. No request for administrative remedy shall be denied acceptance into the Administrative Remedy Procedure because it is or is not on a form; however, no letter as set forth above shall be accepted into the process unless it contains the phrase: "*This is a request for administrative remedy*." (Emphasis added).

As previously stated, inmate Coleman admitted that he did not include the required phrase in the letters he wrote requesting assistance with his work release transfer. In fact, the first correspondence in the record from Coleman to Warden Thompson was a very brief note dated October 26, 2004, over 90 days after the denial of the work release on May 17, 2004, and it did not mention the subject of work release; it merely asked for "a few moments" of the warden's time. While not included in Coleman's exhibits, the bound record contains one other letter from Coleman to Warden Thompson written on December 1, 2004, complaining about Christmas procedures and policy changes concerning work release screening for multiple offenders. However, it does not address Coleman's personal plight in any manner, but rather is written from the perspective of Coleman as a dorm representative asking for notices to post in the dormitory.

Moreover, the December 1 letter was written over 90 days after the approval of a work release on August 18, 2004. Coleman was transferred for work release twenty-eight (28) days after this letter was written. The note and letter described herein are the only two pieces of correspondence written to Warden Thompson, and it is clear that neither of them meets the criteria of the administrative remedies procedures prescribed. In fact, none of the letters written to the assistant warden, the director of the Department of Corrections, or the federal congressman contained the language required to begin the administrative process. Accordingly, the record is devoid of any administrative review or decision.

*Swanson v. Department of Public Safety and Corrections*, 01-1066 (La.App. 1 Cir. 6/21/02), 837 So.2d 634 held that the district court did not have subject matter jurisdiction over an inmate's complaint seeking an injunction to prevent the Department of Public Safety and Corrections from tampering with his medication, food supply, or urinalysis results. This is because there was no record

10

that the inmate had exhausted his administrative remedies pursuant to the Corrections Administrative Remedy Procedure (CARP), La.R.S. 15:1171(B) or La.R.S. 15:1184(A)(2). The court wrote:

> *No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice.* However, the prisoner shall be prohibited from filing any subsequent suits in *forma pauperis* based on the same claim or claims. (Emphasis added.)

> Administrative remedies are available for prisoners pursuant to the Corrections Administrative Remedy Procedure law (CARP), La.R.S. 15:1171 *et seq*. Pursuant to La.R.S. 15:1171B 'all claims seeking . . . injunctive . . . relief' are covered by CARP and '[s]uch administrative procedures, when promulgated, shall provide the exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows.' La.R.S. 15:1172B provides as follows:

> > *No state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative remedy procedure unless and until the offender shall have exhausted the remedies as provided in said procedure. If the offender has failed timely to pursue administrative remedies through this procedure, any petition he files shall be dismissed.*

*Swanson*, 837 So.2d at 635-36.

Likewise, in *Robinson v. Parole & Probation Div., Dept. of Public Safety & Corrections*, 00-1574, pp. 3-4 (La.App. 1 Cir. 9/28/01), 819 So.2d 1031, 1032-33, the appellate court articulated:

> As in any case before this court, the first issue to be considered is whether the case is properly before the court and whether there is a basis for jurisdiction. Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. C.C.P. art. 1; *Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board*, 99-0863 (La.App. 1 Cir. 12/20/00), 774 So.2d 1193, 1196 (on

rehearing en banc), *writ granted*, 2001-0185 (La. 6/1/01), 793 So.2d 188. It is the duty of a court to examine subject matter jurisdiction *sua sponte*, even when the issue is not raised by the litigants. *Id*. at 1197. In this case, the commissioner and the trial court did not have jurisdiction over Mr. Robinson's claim because he failed to exhaust administrative remedies available to him under the Corrections Administrative Remedy Procedure (CARP), La.R.S. 15:1171 et seq., prior to filing this application for a writ of habeas corpus in the district court.

Pursuant to CARP, the Department of Public Safety and Corrections (DPSC) adopted an administrative remedy procedure for receiving, hearing, and disposing of any and all complaints and grievances by offenders against the State which arise while an offender is within the custody or under the supervision of the DPSC, even though the grievance or complaint is urged as a writ of habeas corpus. La.R.S. 15:1171(B). Such administrative procedures provide the exclusive remedy available to offenders for the purpose of preserving any cause of action claimed against the DPSC. La.R.S. 15:1171(B); La.R.S. 15:1172(A); *King v. State, Department of Public Safety and Corrections*, 98-2910 (La.App. 1 Cir. 2/18/00), 754 So.2d 1119, 1121. Concomitantly, no state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative remedy procedure unless and until the offender shall have exhausted the remedies as provided in said procedure. La.R.S. 15:1172(B). If the offender has failed to timely pursue administrative remedies through this procedure, any petition he files shall be dismissed. La.R.S. 15:1172(B).

As a parolee, Mr. Robinson remained within the legal custody of the DPSC at the time he was allegedly unreasonably detained in Arizona. La.R.S. 15:574.7(A); *State v. Bradley*, 99-364 (La.App. 3 Cir. 11/3/99), 746 So.2d 263, 266 ("Release on parole is a release from only [DPSC's] physical custody because [DPSC] still retains legal custody over the parolee.") Thus, Mr. Robinson's claim constitutes a complaint or grievance against the State which arose while he was an offender within the custody of the DPSC. (Footnote omitted).

Because the above described administrative remedies provide the exclusive remedy available to an offender for complaints or grievances, Mr. Robinson's application for a writ of habeas corpus should have been processed through administrative channels before being reviewed by the commissioner and trial court at the Nineteenth Judicial District Court. Thus, the district court

did not have jurisdiction over Mr. Robinson's claim and its judgment is void. La. C.C.P. art. 3; *State v. L.B.*, 95-2116 (La.App. 1 Cir. 5/30/96), 676 So.2d 179, 181; *Boeing Company v. Louisiana Department of Economic Development*, 94-0971 (La.App. 1 Cir. 6/23/95), 657 So.2d 652, 659.

*Robinson*, 819 at 1032-33.

See also, *Poulard v. Hanson*, 36,290 (La.App. 2 Cir. 8/14/02), 823 So.2d 1130, *writ denied,* 02-2730 (La. 1/24/03), 836 So.2d 45, where the inmate was required to exhaust administrative remedies to challenge removal of his mattress, sheets, and blanket as disciplinary measures, before bringing a civil action in trial court.

As to the substance of his complaint, Coleman alleges that his constitutional rights were violated through the "development and implementation of institutional policy that is contrary to Louisiana Law 15:1111 and D.O.C. Regulation # B-02-001, Appendix III, and for withholding him from work release participation."

In his petition to the district court, Coleman cites La.R.S. 15:1111(B), which states as follows:

### § 1111.  Work release program

B.   The department shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program.  Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program, subject to the provisions of this Part.

He also cites Department of Corrections Regulation B-02-001, and states that it provides in Appendix III, subpart E (1) that, "[u]nless precluded by law, (see section 2 below) inmates within 2 years of their discharge date or 6 months of their parole eligibility date <u>are</u> eligible for work release."  However, Coleman did not attach a copy of the regulation, nor did he indicate any of the referenced provisions

in section 2 that preclude eligibility. While we were not provided a copy of the regulation, we were able to find references to the section cited in La. Admin. Code tit. 22, pt. XI, § 311 (2005), which states in pertinent part as follows:

> § 311. Work Release
>
> A. The board *may* recommend to the secretary of the Department of Public Safety and Corrections that an inmate be placed on work release at any time that the inmate is within two years of discharge by diminution of sentence, diminution of sentence/parole supervision, or full term release date.
>
> 1. The inmate must not be serving a sentence for one of the enumerated offenses specified in R.S. 15:1111 or Department Regulation No. B-02-001 Assignment and Transfer of Inmates. In this case, he would only be eligible in the last six months of his term.
>
> . . . .
>
> B. Inmates who are serving a sentence for an enumerated offense as specified in R.S. 15:1111 or Department Regulation No. B-02-001 "Assignment and Transfer of Inmates," are eligible for work release only during the last six months of their term. . . .

(Emphasis added).

Accordingly, the recommendation for work release appears to be permissive rather than mandatory, at least based on the limited materials that we have, and without doubt the eligibility for work release turns on the inmate's offense and the length of his sentence. Therefore, we could not make a determination regarding his eligibility for work release even if he had followed the administrative remedies procedure, because we have not been provided the applicable regulation or any information whatsoever regarding Coleman's crime or the length of his sentence. Coleman further argues three cases that support his position that he complied with the statutory remedies procedure by writing letters. While the cited cases do not support Coleman's position, they are instructive and tend to support the opposition.

14

In *Peterson v. Austin*, 36,365 (La.App. 2 Cir. 12/11/02), 836 So.2d 235, *writ denied*, 03-0510 (La. 1/30/04), 865 So.2d 70, the inmate brought action against a sergeant, alleging retaliation for the inmate's filing of administrative grievances, and against the correctional center nurse, alleging improper denial of a request to be seen by a mental health professional. The district court dismissed the inmate's suit pursuant to the defendant's exceptions of prematurity and lack of subject matter jurisdiction. The appellate court affirmed the district court's dismissal of the inmate's suit. It concluded that even though the suit had been styled as a "tort" action when filed in the district court, the inmate was actually seeking a remedy with respect to his conditions of confinement. That is accomplished through CARP, and which step the inmate apparently skipped. The court stated as follows:

> Although Peterson's petition [in district court] was styled as a complaint in tort, the nature of a pleading is determined by its substance and not its caption. See La. C.C. P. art. 865. . . .

*Peterson,* 836 So.2d at 237.

Therefore, the reference to the substance governing over the caption in *Peterson* is a reference to a pleading filed in district court, not a letter filed in compliance with the administrative remedies governing such actions. In the present case, the statutes cited above govern the inmate's remedy, not La.Code Civ.P. art. 865 which governs district court pleadings. The statutes governing administrative remedies clearly require a properly captioned letter or a letter at least containing the introductory phrase explaining the reason for the letter, "This is a request for administrative remedy." Moreover, in the present case, where Coleman captioned his petition in district court as a tort action for damages, and he failed to follow the procedures for first seeking an administrative remedy, his case is analogous to *Peterson* with regard to the similar reason for dismissal, but not for the proposition

15

Coleman asserts. The *Peterson* court discussed the propriety of *judicial review in the district court* after, *but only after,* exhausting the administrative remedy outlined above. Peterson had not done that; nor has Coleman. The *Peterson* court concluded as follows:

> Peterson's petition and the record reveal that he initially intended to pursue administrative remedies only for issues pertaining to his conditions of confinement and discipline. The provisions of La.R.S. 15:1177(A), therefore, required him to seek judicial review of any adverse administrative remedy decision in the Nineteenth Judicial District Court within 30 days of receipt of the adverse decision. We conclude, therefore, that if Peterson did exhaust his administrative remedies, the proper venue for judicial review of that decision was only in the Nineteenth Judicial District Court. The trial court therefore correctly sustained the defendant's exceptions of prematurity and lack of subject matter jurisdiction.

*Peterson,* 836 So.2d at 238.

Also cited by Coleman is *Revere v. Reed,* 95-1913 (La.App. 1 Cir. 5/10/96), 675 So.2d 292, where the inmate sought to obtain the names of the Grand Jury members in his case. When the records were not provided, the inmate filed a pleading in district court alleging that the district attorney had failed to comply with the Public Records Act. The inmate's pleading was entitled, "Petition for Compliance with LSA RS 44:1 with Sanctions." In a footnote, the appellate court stated that despite its caption, the pleading was in substance an application for a writ of mandamus since it contained an order for a rule to show cause. The court cited La.Code Civ.P. art. 865 for the proposition that the substance of a pleading determines the action sought, and the court's analysis in the main text of the opinion proceeded to discuss the viability of the claim in that regard. The *Revere* case had nothing to do with the conditions of an inmate's confinement and his statutory Request for Administrative Remedy prior to filing a pleading in district court.

16

Inmate Coleman also cites *Sims v. Wackenhut Health Services, Inc.*, 97-1147 (La.App. 1 Cir. 2/20/98), 708 So.2d 1140, *writ denied,* 98-0747 (La. 5/01/98), 718 So.2d 417, for the proposition that his letters did not have to be in proper form. In *Sims*, an inmate's foot was amputated following a failed request for transfer to another facility to obtain better medical treatment. The appellate court overturned the trial court's finding of abandonment. With regard to the inmate's letter of request to the warden, the appellate court found that the inmate had sufficiently pursued his administrative remedies against the Department of Public Safety and Corrections before seeking a legal remedy in the district court for the alleged inadequate medical care. However, the *Sims* court did not discuss in any manner the content or captions or introductory phrases in the letter written to the warden.

In the present case, as asserted by Warden Thompson, a letter to the warden is the proper vehicle to obtain administrative remedy, but the letter must be timely, and it must contain the statutory phrase, "[t]his is a request for administrative remedy." Accordingly, none of the cases cited by inmate Coleman support his position that he exhausted his administrative remedies before filing his suit in district court. Moreover, his pleading in district court, improperly entitled as a "tort" action, was accepted by the district court and ruled upon based upon its substance, a challenge to the rules of his confinement. His suit in district court was dismissed, not because of the title of his pleading, but because he had failed to follow the procedures outlined for exhausting his administrative remedy before seeking judicial review in the district court. Those procedures did require particular statutory language, an omission of which, as mandated by statute, would lead to dismissal of the inmate's claim.

IV.

**CONCLUSION**

Accordingly, where inmate Coleman did not exhaust the administrative remedies mandated by La.R.S. 15:1171, *et seq.*, and La. Admin. Code tit. 22, pt. XI, § 325 (2005), the district court properly dismissed his suit with prejudice.

Appellant, James Coleman, is cast with all costs of these proceedings.

**AFFIRMED.**